753 So.2d 549 (1999)
FULTON COUNTY ADMINISTRATOR, as Administrator of the Estate of Lita McClinton Sullivan, Petitioner,
v.
James Vincent SULLIVAN, Respondent.
No. 87110.
Supreme Court of Florida.
November 24, 1999.
*550 Richard A. Kupfer, John B. Moores and David W. Boone of Richard A. Kupfer, P.A., West Palm Beach, Florida, for Petitioner.
Randall Nordlund and Joseph E. Altschul of Gilbride, Heller & Brown, P.A., Miami, Florida, for Respondent.
Roy D. Wasson, Miami, Florida, for Academy of Florida Trial Lawyers, Amicus Curiae.

ON REHEARING
PER CURIAM.
Petitioner's Motion for Rehearing, directed to the opinion issued herein on September *551 25, 1997, is granted. The previous opinion is withdrawn and the attached revised opinion is substituted as the opinion of the Court in this matter. No further motion for rehearing shall be allowed.
We have for review a decision certifying the following question to be of great public importance:
ARE STATUTES OF LIMITATIONS FOR CIVIL ACTIONS TOLLED BY THE FRAUDULENT CONCEALMENT OF THE IDENTITY OF THE DEFENDANT?
Sullivan v. Fulton County Adm'r, 662 So.2d 706 (Fla. 4th DCA 1995). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. Based on our finding upon rehearing that the Georgia statute of limitations applies in this case, we reverse the district court's decision to the extent that it reversed the judgment against Sullivan. Accordingly, we decline to answer the certified question as to Florida law concerning statutes of limitations.
On January 16, 1987, while respondent James Sullivan and his wife Lita Sullivan were going through divorce proceedings, Ms. Sullivan was killed in Atlanta, Georgia. Throughout the initial police investigation, respondent denied any involvement in the crime and proposed several alternative theories as to who may have killed her. It was not until several years later, in 1990, that respondent confessed his participation in the crime. Based on this information, on December 23, 1991, this wrongful death action was filed against respondent in Florida, where he was a resident.
In answering the complaint, respondent raised the affirmative defense that Florida's two-year statute of limitations barred this claim. Petitioner Fulton County (Georgia) Administrator, as administrator of Ms. Sullivan's estate, argued that respondent's fraudulent concealment of his participation in the murder tolled the statutory limitation period. Twice during the trial, once at the close of the plaintiffs case and once at the close of all of the evidence,[1] respondent moved for a directed verdict, claiming among other things that the statute of limitations barred the lawsuit. The trial court denied both motions. After a jury trial, the jury awarded petitioner $3.5 million in compensatory damages and $500,000 in punitive damages. Respondent then timely moved for a new trial and four months later moved for relief from the judgment under Florida Rule of Civil Procedure 1.540. The motion for new trial was based upon a claimed error in failing to enforce the statute of limitations. The trial court denied these motions. However, respondent did not move to have the verdict set aside and judgment entered in his favor in accordance with the motion for directed verdict made at the close of all of the evidence as required by Florida Rule of Civil Procedure 1.480.
On appeal, the Fourth District reversed the verdict and remanded the cause for entry of judgment in respondent's favor. Sullivan, 662 So.2d at 710. The district court found that Florida courts have recognized that fraudulent concealment of a cause of action will toll the statute of limitations. Id. at 707. However, the court felt constrained to reverse the trial court and follow its own precedent in International Brotherhood of Carpenters & Joiners of America, Local 1765 v. United Association of Journeymen & Apprentices, 341 So.2d 1005 (Fla. 4th DCA 1976), cert. denied, 357 So.2d 186 (Fla.1978), in which the district court held that fraudulent concealment of the identity of a tortfeasor does not fit within the judicially created tolling exception of concealment of a cause of action. Sullivan, 662 So.2d at 708. The district court below questioned the propriety of this result in light of both recent case law from other jurisdictions holding that fraudulent concealment of one's identity should be treated like fraudulent concealment of a cause of action and the fairness of protecting a tortfeasor from defending a stale claim when the tortfeasor *552 is responsible for the delay. Id. at 708-09. As well, the district court concluded that even though fraudulent concealment was included as a tolling provision only in section 95.11(4)(b), Florida Statutes (1995) (medical malpractice statute of limitations), the doctrine could broadly apply to other causes of action. 662 So.2d at 709-10 (citing Proctor v. Schomberg, 63 So.2d 68 (Fla.1953)). Given its discomfort with the result, coupled with the fact that this Court had not yet addressed the issue, the district court certified the foregoing question, asking us to clarify whether fraudulent concealment of the identity of the defendant in a civil action will toll the statute of limitations. Sullivan, 662 So.2d at 710.

LAW AND ANALYSIS
As stated, we decline to answer the certified question because this case is controlled by the Georgia statute of limitations, in which a finding of fraudulent concealment expressly tolls the statute of limitations for a wrongful death action. Ga.Code Ann. § 9-3-96 (1982). We find that the limitations period in this case is controlled by our recent decision in Merkle v. Robinson, 737 So.2d 540 (Fla.1999). In Robinson, we answered a certified question and held that the "significant relationship" test for use in applying section 95.10, Florida Statutes (1997) (borrowing statute), also applies to the determination of whether to apply Florida's statute of limitations, section 95.11, Florida Statutes (1997), or the limitations period of another jurisdiction. Id. at 543. In Robinson, this Court disapproved Rodriguez v. Pacific Scientific Co., 536 So.2d 270 (Fla. 3d DCA 1988), upon which the Fourth District Court of Appeal relied in Sullivan for the proposition that the statute of limitations of the forum state applies except where there is a shorter limitations period in the state where the tort occurred. See Sullivan, 662 So.2d at 707.
Here, petitioner argues on rehearing that under our reasoning in Robinson we should apply Georgia law in determining whether petitioner is time-barred in this case by a relevant statute of limitations.[2] Under Robinson, we now find that the Georgia statute of limitations applies because, as the trial court found in this case, the circumstances underlying this case have the most significant relationship to the State of Georgia. See Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980). Lita Sullivan, a Georgia resident, was killed in Georgia, and Georgia police investigated her death. Moreover, the plaintiffs in this wrongful death action, Lita Sullivan's parents, are Georgia residents. Thus, we agree with the trial court that this action has a significant relationship to the State of Georgia.
In Florida, a cause of action for wrongful death accrues on the date of death, see St. Francis Hosp. v. Thompson, 159 Fla. 453, 31 So.2d 710 (1947), and has a two-year statute of limitations period. See § 95.11(4)(d), Fla. Stat. (1985). The Florida statute of limitations, accordingly, began to run in this case on January 16, 1987, the date of Ms. Sullivan's death. In Georgia, a cause of action for wrongful death accrues at death and has a two-year limitations period. See Miles v. Ashland Chemical Co., 261 Ga. 726, 410 S.E.2d 290 (1991). However, a Georgia statute expressly tolls the statute of limitations for fraudulent concealment by providing that when a defendant is guilty of "fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Ga.Code Ann. § 9-3-96 (1982); see Shipman v. Horizon Corp., 245 Ga. 808, 267 S.E.2d 244 (1980); Brown v. Brown, 209 Ga. 620, 75 S.E.2d 13 (1953).
Thus, the jury's finding of fraudulent concealment in this case tolls Georgia's *553 two-year statute of limitations for filing a wrongful death action so that the period of limitation actually began to run from the time of petitioner's discovery of the fraud in 1990. The filing of the action for wrongful death on December 23, 1991, was within the statutory limitations period of the State of Georgia.
Respondent contends that even if Florida law dictates that the Georgia statute of limitations applies under the significant relationship test, petitioner is still bound by Florida's two-year statute of limitations because under Gray v. Armstrong, 222 Ga.App. 392, 474 S.E.2d 280 (1996), Hunter v. Johnson, 259 Ga. 21, 376 S.E.2d 371 (1989), and Taylor v. Murray, 231 Ga. 852, 204 S.E.2d 747 (1974), the Georgia statute of limitations is considered to be procedural rather than substantive, thereby dictating the use of the statute of limitations of the law of the forum, which is the state in which the action is brought. Thus, respondent argues that this question would be governed by the statute of limitations of Florida, which is the forum state in this case.
We disagree with respondent's reasoning. Hunter is distinguishable in that it does not address a choice of laws issue. In both Gray and Taylor, Georgia courts applied Georgia law to reach the conclusion that because a limitations question is procedural in nature, the Georgia statute of limitations applied to causes of action filed in other states. In those cases, Georgia was the forum state and the Georgia court was treating the Georgia statute of limitations as procedural rather than substantive law.
Here, however, Florida is the forum state, and this Court determined in Robinson that statutes of limitations are to be treated as substantive law and thus are subject to the significant relationship test in determining which state's statute of limitations applies, not which state's entire body of law applies. Robinson dictates that we choose Georgia law only insofar as it includes the Georgia statute of limitations. Therefore, we remand to the Fourth District with directions to order that the judgment against respondent be reinstated.
Finally, we address a procedural issue raised by petitioner.[3] Petitioner contends that the district court could not direct the trial court to enter judgment in favor of respondent because respondent did not renew his motion for directed verdict strictly in accord with Florida Rule of Civil Procedure 1.480. Petitioner points to the federal courts' interpretation of Federal Rule of Civil Procedure 50(b), see Johnson v. New York, New Haven & Hartford R.R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952); Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947), and argues that we should follow these decisions and hold that a party who fails to renew a motion for directed verdict and only files a motion for new trial is not entitled to a judgment entered in a party's favor. Rather, with the case in such a posture, petitioner argues that an appellate court may only grant the party a new trial. We do not agree; instead, we agree with Justice Frankfurter's dissent in Johnson that such an application of the rule does not facilitate the proper administration of justice.[4]
*554 Respondent's motion for new trial was based upon his statutory limitation defense. It is correct that technically, in addition to the motion for new trial, respondent should have filed a motion renewing his earlier motion for directed verdict in compliance with Florida Rule of Civil Procedure 1.480. However, when a motion for new trial encompasses the same legal basis upon which a motion for directed verdict was made during the trial and at the close of all the evidence, our courts should look to the substance of the motion and rule on the basis of the legal issue raised in the motion. Therefore, we reject petitioner's claim that the district court, after reversing the final judgment, was powerless to direct the entry of judgment in respondent's favor.
Accordingly, we reverse the district court's decision to the extent that it reversed the judgment against respondent. We remand for proceedings consistent with this opinion.
It is so ordered.
HARDING, C.J., SHAW, WELLS, and ANSTEAD, JJ., and OVERTON, Senior Justice, concur.
KOGAN, Senior Justice, dissents.
NOTES
[1] In this motion, respondent renewed his earlier motion for directed verdict.
[2] Petitioner made this argument in the Fourth District below but did not raise it previously in this Court because it was outside the scope of the certified question.
[3] Given our jurisdiction on the basis of the certified question, we have jurisdiction over all of the issues raised in this case. Feller v. State, 637 So.2d 911, 914 (Fla.1994).
[4] Justice Frankfurter wrote:

The Federal Rules of Civil Procedure are the product of the progress of centuries from the medieval court-room contest-a thinly disguised version of trial by combatto modern litigation. "Procedure is the means; full, equal and exact enforcement of substantive law is the end." Pound, The Etiquette of Justice, 3 Proceedings Neb. St. Bar Assn. 231 (1909). This basic consideration underlies the Rules; with it in mind we construed Rule 50(b) in the Montgomery Ward case.
It has been said of the great Baron Parke: "His fault was an almost superstitious reverence for the dark technicalities of special pleading, and the reforms introduced by the Common Law Procedure Acts of 1854 and 1855 occasioned his resignation." (Sir James Parke, 15 D.N.B. 226).
Baron Parke despaired prematurely. If he had waited another hundred years this Court today would have vindicated his belief that judges must be imprisoned in technicalities of their own devising, that obedience to lifeless formality is the way to justice.
Johnson, 344 U.S. at 62, 73 S.Ct. 125 (Frankfurter, J., dissenting).